UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HEATHER LOU WOLFE, ) <br> ) <br> Defendant. ) | No. 6:20-CR-21-CHB-HAI-4 <br><br> RECOMMENDED DISPOSITION |

*** *** *** ***

On referral from District Judge Boom (D.E. 138), the Court considers reported violations of supervised release conditions by Defendant Heather Lou Wolfe.

Judge Boom entered Judgment against Defendant in July 2021 for one count of conspiracy to distribute 50 grams or more of methamphetamine mixture. D.E. 107. Defendant was sentenced to 46 months of imprisonment followed by three years of supervised release.

Defendant was released on June 30, 2023. On July 14, 2023, she was referred to Bouncing Back Counseling in Manchester, Kentucky, for outpatient substance abuse and mental health counseling.

The following October, the United States Probation Office ("USPO") reported a violation, but asked that no revocation proceedings commence at that time. Judge Boom granted that request. D.E. 119. According to the USPO,

> On October 17, 2023, Wolfe submitted a urine sample at Bouncing Back Counseling in Manchester, Kentucky, which appeared positive for methamphetamine, via instant testing device. The sample was sent to the lab for testing. The defendant returned to Bouncing Back Counseling later that same day. Wolfe and her counselor called this officer and reported Wolfe suffering a relapse. Wolfe indicated she used methamphetamine, oxycodone and

> hydrocodone. The defendant was instructed to report to the probation office on October 18, 2023.
>
> On October 18, 2023, the defendant reported to the probation office in London, Kentucky. Wolfe reported using methamphetamine and oxycodone on October 14, 2023, after suffering pain due to kidney stones and a urinary tract infection. The defendant further indicated using hydrocodone on October 17, 2023, after submitting the positive urine sample. Wolfe stated she returned to Bouncing Back Counseling to admit her mistake and acknowledged she did not handle the situation correctly. Wolfe indicated believing she will be able to recover from this relapse and requested weekly drug testing and increased outpatient treatment. This officer discussed the possibility of inpatient substance abuse treatment with the defendant. Wolfe stated she preferred increased outpatient treatment due to having full-time employment and caring for her three children.
>
> This officer recommends no action be taken at this time. The defendant's outpatient substance abuse and mental health treatment will be increased to occur weekly. The defendant's substance abuse testing will also be increased to occur weekly for a period of at least three months.

*Id.*

On February 20, 2024, Defendant appeared before Judge Boom for a status conference. D.E. 131. It was revealed that Defendant was then in a relationship with codefendant Robert Tyler Smith, in violation of her release conditions. Mr. Smith was undergoing revocation proceedings at that time. The USPO did not seek revocation for Defendant's cohabitation with Smith, and the Court permitted them to continue living together.

## I.

On March 19, 2024, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report,

> On March 15, 2024, the defendant submitted a urine specimen which appeared positive for buprenorphine, via instant testing device, at Bouncing Back

2

Counseling in Manchester, Kentucky. The defendant contacted this officer and admitted to the use of buprenorphine without a prescription.

On March 18, 2024, Wolfe met with this officer and signed a Prob 4-Positive Drug Test Admission Report due to the use of buprenorphine on March 10, 2024, before submitting a urine sample on March 15, 2024. During this interaction Wolfe submitted a urine specimen which appeared positive for buprenorphine and admitted to using buprenorphine after speaking to this officer on March 15, 2024, and signed a separate Prob 4-Postitive Drug Test Admission Report.

Based on these facts, Violation #1 charges a violation of the condition that Defendant "must refrain from any unlawful use of a controlled substance." This is a Grade C violation.

Violation #2 charges a violation of the condition that Defendant must not commit another federal, state, or local crime and the condition that she not unlawfully possess a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of buprenorphine, on account of her prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Following Defendant's arrest, the Court conducted an initial appearance pursuant to Rule 32.1 on March 22, 2024. D.E. 141. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant argued for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on March 28, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 142. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. She admitted using buprenorphine on March 10 and 15. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each

3

violation as described in the Report. The United States thus established Violations #1 and #2 under the standard of section 3583(e). The parties then argued for different penalties.

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute 50 grams or more of a mixture or substance containing methamphetamine, a Class B felony. *See* 21 U.S.C. § 846. Such a conviction carries a three-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violation #2. Given Defendant's criminal history category of IV (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is twelve to eighteen months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C.

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

§ 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, both parties recognized revocation and further supervision are appropriate. The government requested twelve months and a day of incarceration, followed by two years of supervised release. The defense requested some sort of split sentence with home incarceration or a halfway house. The defense did not object to two additional years of supervision.

Counsel for the government found "tension" and "competing interests" in this case. There were both mitigating factors and aggravating factors that weighed heavily in both directions. Start with the underlying conviction. Defendant had the safety valve and "minor role" reduction. At sentencing, neither side asked for a stiff sentence, as they recognized that Defendant has a troubled past and she was involved in the trafficking conspiracy because of her relationship with codefendant Feltner. The result is that she received a sentence well below her statutory maximum and below her Guidelines Range, which is usually an aggravating factor on revocation.

Also in Defendant's favor is the fact she admitted both instances of buprenorphine use. And taking pain pills was less serious than the meth use that prompted October 2023's "12A" report. This 12A report was an exercise in leniency. When supervisees re-use the same drug involved in the underlying offense, this usually results in revocation proceedings. The government described the 12A request as a "compromise," wherein Defendant was given more treatment and more testing rather than facing revocation. This enhanced monitoring was "an investment' by the Court. While on release, Defendant had a period of doing productive work.

5

And she had the February 2024 status conference with Judge Boom, where things seemed mostly fine.

The government recognized that Defendant's relationship with codefendant Robert Tyler Smith was the "catalyst" for the violation conduct. It started a "bad decision-making pattern." The Court had permitted that relationship, once discovered, even though it was a violation. According to the government, relationships are hard for Defendant, stretching back to her relationship with her father who gave her drugs when she was just fourteen to sixteen years old. Drugs were "at the core" of that relationship. And Defendant later had a boyfriend who died from his drug use.

According to the government, the grace shown to Defendant at sentencing, in the 12A, and at the status conference applied "upward pressure" toward a penalty within the twelve-to-eighteen-month Guidelines Range. The government then reasoned that a sentence of twelve months and a day would be helpful in providing an incentive for good behavior. Two more years of supervision would give Defendant more access to resources and assistance.

The government also suggested adding a condition forbidding contact with Mr. Smith. The defense balked at this, suggesting such restrictions would be putting too much pressure on Defendant to be perfect.

According to the defense, Defendant has lots of potential and "knows she put herself here" by her own choices. The defense agreed with the government's assessment of mitigating and aggravating factors. According to the defense, Defendant did reach out for help. But she reached out to a Bouncing Back counselor, not her probation officer. Defendant faithfully attended counseling. The defense was concerned that a too-short sentence might prevent her from accessing the services that are available at BOP facilities, but not county jails.

According to the defense, Defendant's "whole identity is as an addict," a problem that goes back to her childhood. Defendant wants to change, but she has a long way to go. And relapses are frankly not surprising.

Defendant addressed the Court. She asked not to be restricted from contact with Mr. Smith (who is presently incarcerated after his own revocation). His possessions are still at her house, and he plans to come back. Defendant's family is "used to" him, and she does not want her issues to end up hurting him.

**IV.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was a minor participant in a dangerous drug trafficking conspiracy. She used meth again last October, and her pain pill usage, while not as dangerous, remains troubling.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant's painful past is a major mitigating factor. As a girl, she was set off on the wrong path. And the men in her life keep leading her into drug use and crime. Nevertheless, Defendant has to put her past behind her and become the author of her own future. Defendant's low underlying sentence, her meth use last fall, her unauthorized moving in with Smith, and her multiple uses of pain pills are aggravating factors in her recent personal history.

Another factor focuses on opportunities for education and treatment. Defendant was undergoing counseling for addiction and for mental health issues. Such treatment can continue post-release under the existing conditions.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). As already noted,

Defendant has been shown leniency and the Court has invested in her recovery. The trust breach is significant. But even more significant on balance are the struggles in Defendant's past.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, Defendant's Range, driven by her criminal history and admitted drug possession, is high in relation to the severity of this violation and the mitigation of her troubled past. A year or more of prison time is an excessive penalty for using buprenorphine, particularly for a person with Defendant's disadvantages. The Court finds that a revocation sentence of six months is sufficient, but not greater than necessary, to address the relevant sentencing factors. The Court also agrees that two years of supervision is appropriate. And the Court declines to recommend adding a condition prohibiting contact with Mr. Smith.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon her stipulation, Defendant be found guilty of both violations.
2. Revocation with a term of imprisonment of six months, followed by 24 months of supervised release on the conditions previously imposed.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As

defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Judge. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 29th day of March, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge